UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mary A. Larsen,

Plaintiff,

v.

Miller-Dwan Medical Center, Inc.,

Defendant.

Civil File No. 00-2017 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This case arises from Plaintiff Mary Larsen's suit against Defendant Miller-Dwan Medical Center, Inc. for employment discrimination and retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01 et seq., invasion of privacy, and breach of contract.[1] This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Court grants in part and denies in part Defendant's Motion.

**BACKGROUND**

Miller-Dwan Medical Center ("Miller-Dwan") is a Minnesota non-profit corporation that operates a hospital in Duluth with a variety of specialized units. Mary Larsen was hired as a social worker in Miller-Dwan's Dialysis Unit in August, 1990. Larsen eventually

---

[1]Because Plaintiff has dropped her invasion of privacy claim, the Court need not consider the merits of that claim.

FILED OCT 0 2 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

became the Director of Social Services. She was also assigned various additional duties from other departments and served as the Director for Chaplaincy and the Director for the Employee Assistance Program. (Complaint ¶ 4; Larsen Dep. 9-14.)

Although the facts giving rise to this case appear to have roots reaching back to before 1998, the details of these facts are not well developed by the parties. It seems, however, that there were tensions between Larsen and some of her co-workers and subordinates. (See Mahoney Dep. at 52-53; Larsen Dep. at 22-23, 100, 102, 108.) In particular, Larsen admits that there were some "personal issues" in her department that were a problem. (Larsen Dep. at 114.) After looking into these problems, Maureen Mahoney, Miller-Dwan's Vice President for Patient Care Services, transferred the supervision of several social workers to another department director. The more pertinent facts to this case start in 1999, when Miller-Dwan established a Patient Care System ("PCS") team to write various materials and computerize patient charting. Larsen was placed on this team.

After Larsen missed several PCS meetings for a variety of reasons, including the sickness of her daughters and Christmas shopping (see id. at 163-67), Deb Kossett, one of the PCS team leaders, left Larsen a voice mail message questioning her about her whereabouts. (See Id. at 183.) Kossett also sent Larsen an e-mail entitled, "Where are you?" (Id. Ex. 13.) Larsen and Kossett then had a meeting on December 30, 1999, ostensibly to work out their differences. At this meeting, Larsen removed herself from the PSC team. (Id. at 208.) After the meeting, Larsen prepared a summary of their conversation, referred to by

the parties as the "Verbatim." Larsen gave a copy of the Verbatim to Mahoney.

Although the parties provide little analysis of the Verbatim, Miller-Dwan contends that it "must be reviewed in its entirety to understand Mahoney's concern for Larsen's continuing ability to act as [Miller-Dwan's] Social Services Director." (Def.'s Supp. Mem. at 11.) Larsen does not directly respond to this allegation, but simply states that the Verbatim "is not a word-for-word transcript." (Pl.'s Opp'n Mem at 8.) According to Larsen, the Verbatim was written to fulfill an assignment in a soul making class, a clinical pastoral education class. (See Larsen Dep. at 193-94.)

After reading the Verbatim, Mahoney gave a copy of it and all of the correspondence between Larsen and Kossett to the Director of the Mental Health Department. This Director, who holds a Master's Degree in counseling, told Mahoney that she thought that Mahoney should try to get a psychiatric assessment of Larsen. (Mahoney Dep. at 135.) Mahoney ultimately decided that Larsen needed to see a psychiatrist to determine whether Larsen was capable of being the Director of Social Services. After refusing to submit to the pyschiatric examination, Larsen was suspended from employment and placed on family medical leave. Larsen was then asked to release her mental health records to Miller-Dwan. She refused to do this.

On April 7, 2000, Miller-Dwan reassigned Larsen to a position as a social worker in the Dialysis Unit, with decreased pay and benefits. Larsen declined to accept this new position. On April 20, 2000, Larsen filed a charge of disability discrimination and retaliation

with the Equal Employment Opportunity Commission ("EEOC"). On May 5, 2000, Larsen's employment was terminated for alleged insubordination and performance deficiencies. (Larsen Dep. Ex. 34.) On June 29, 2000, the EEOC issued Larsen a Notice of Right to Sue. On August 14, 2000, Larsen filed her Complaint against Miller-Dwan.

**DISCUSSION**

**A. Summary Judgment Standard**

Summary judgment is only proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik, 47 F.3d at 957. However, because discrimination cases often turn on inferences rather than on direct

evidence, courts are more deferential to the non-moving party alleging discrimination. Webb v. Garlick Mfg. Co., 94 F.3d 484, 486 (8th Cir. 1996).

**B. Larsen's Claims**

In this case, Larsen alleges employment discrimination and retaliation under the ADA and the MHRA. Although the legal theories underlying her claims are sometimes difficult to tease apart in her memorandum opposing summary judgment, it appears that she is making three distinct claims: (1) Miller-Dwan discriminatorily terminated her, under the ADA and MHRA, because she was regarded as having a mental disability; (2) Miller-Dwan improperly required that she undergo a psychiatric evaluation in violation of the ADA and MHRA; and (3) Miller-Dwan retaliated against her, in violation of the ADA and MHRA, for refusing to undergo the evaluation, for refusing to produce her medical records, and for filing a charge with the EEOC. Larsen has also filed a breach of contract claim.

1. Discrimination Claim

Initially, Larsen must establish a prima facie case of discrimination or face dismissal of her ADA and MHRA discrimination claims. See Aucutt v. Six Flags Over Mid-Am. Inc., 85 F.3d 1311, 1318 (8th Cir. 1996); Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 598 (8th Cir. 1998). Because the ADA and MHRA require essentially the same elements to prove a prima facie case, and because the parties treat the claims as identical, this Court will analyze these claims together. See Cody, 139 F.3d at 598.

Generally, to establish a prima facie case, a plaintiff must show that (1) she is a

disabled person within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job (with or without reasonable accommodation), and (3) she has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. See id.

If Larsen does establish a prima facie case, the Court uses the well-known burden-shifting approach of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), to analyze Plaintiff's discrimination claims. See Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994). Under the McDonnell Douglas test, once a plaintiff has pled a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the plaintiff's termination. If the defendant successfully produces such a reason, the burden shifts back to the plaintiff to establish that the defendant's articulated justification for his or her termination is a mere pretext for discrimination. See McDonnell Douglas, 411 U.S. at 802-05. At every step, however, the focus should remain on whether or not the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's disability. Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1023 (8th Cir. 1998)

Larsen's biggest hurdle in this case is establishing that she is a disabled person within the meaning of the ADA.[2] Larsen attempts to clear this hurdle by arguing that she was

[2] Because Miller-Dwan has not challenged Larsen's ability to satisfy the second prong of her prima facie case, the Court will presume, for the purposes of summary judgment, that Larsen has satisfied this prong. In its motion for summary judgment, Miller-Dwan spends less than a page

regarded as having a mental disability by Miller-Dwan. See 42 U.S.C. § 12102(2)(C). In order to succeed in her claim under subsection (C), Larsen must show that she was regarded as having a "mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. § 12102(2)(A). Miller-Dwan persuasively argues that the mere fact that it requested that Larsen undergo a psychiatric examination cannot suffice to show that it regarded Larsen as having a mental impairment. See Cody, 139 F.3d at 597 (holding that a request for an medical evaluation is not equivalent to treatment of the employee as though she were impaired). Larsen, nevertheless, cites several pages' worth of deposition testimony which do create a genuine issue of material fact as to whether Miller-Dwan regarded her as having some sort of mental impairment. (See, e.g., Larsen Dep. at 229; 242; 244; Huntley Dep. at 22; Mahoney Dep. at 130-31; Kossett Dep. at 81.) Larsen has more difficulty, however, when she tries to show that this perceived impairment substantially limited a major life activity.

Larsen contends that her precieved impairment substantially limited her major life activity of working. The Court will follow the lead of the Supreme Court and the Eighth Circuit and assume without deciding that working is a major life activity under the ADA. See Sutton v. United Airlines, Inc., 527 U.S. 471, 492 (1999); Kellogg v. Union Pac. R.R.,

---

challenging Larsen on prong three of her prima facie case. Because there is no dispute that Larsen suffered adverse employment action, Larsen must only create a genuine issue of material fact as to whether that adverse employment action occurred under circumstances from which discriminatory intent may be inferred. Larsen has provided enough factual support with regard to this third prong to survive summary judgment.

233 F.3d 1083, 1087 (8th Cir. 2000). For Larsen to show that her ability to work has been substantially limited, she must show that she was regarded as unable to work in a broad class of jobs. See Shipley v. City of University City, 195 F.3d 1020, 1023 (8th Cir. 1999); see also 29 C.F.R. §§ 1630.2(j)(3)(i). Viewing the record in the light most favorable to her, Larsen has managed to raise a genuine issue of material fact as to whether Miller-Dwan regarded her as incapable of working in a broad class of jobs.

Larsen contends that her widely diverse hospital duties constituted more than a single job. (See Pl.'s Opp'n Mem. at 21.) Although she has adduced little more than titular evidence to support her contention, the Court finds the fact that Larsen was considered the Director of Chaplaincy and the Director of Employee Assistance, in addition to being considered the Director of Social Services, sufficient, in the absence of any counter evidence, to raise a factual issue in this case. The Court points out, however, that if it is determined at a later stage of the litigation that Larsen's various duties and titles were all constituent parts of her job as Director of Social Services, the fact that Larsen was precluded from performing that particular job would not impose a substantial limitation on her ability to work in general. See Taylor v. Nimock's Oil Co., 214 F.3d 957, 960 (8th Cir. 2000) (stating that "[i]nability to perform one particular job does not constitute a substantial limitation on working").

The Court need not consider at length Larsen's alternative argument that she was discriminated against because she was regarded by Miller-Dwan as having a mental

impairment that substantially limited the major life activity of getting along with others. See McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999) (holding that "[b]ecause interacting with others is an essential, regular function, like walking and breathing, it easily falls within the definition of 'major life activity'"). But see Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 15 (1st Cir. 1997) (stating that the "ability to get along with others" is too vague to constitute a major life activity, although "a more narrowly defined concept going to essential attributes of human communication" might be considered a major life activity); Davis v. Univ. of North Carolina, __F.3d__, No. 99-1888, 2001 U.S. App. LEXIS 18757, at *14 (4th Cir. Aug. 20, 2001) (expressing doubt about whether the ability to get along with others constitutes a major life activity under the ADA). Even if this Court assumes that interacting with others is a major life activity, Larsen has not met the burden of showing that her ability to interact with others was substantially limited. As the Ninth Circuit conceded in McAlindin, "[m]ere trouble getting along with coworkers is not sufficient to show a substantial limitation." McAlindin, 192 F.3d at 1235. Viewing the facts in the light most favorable to her, Larsen has at most demonstrated that she had trouble getting along with her coworkers and subordinates. Such conflicts of personality do not constitute a substantial impairment of the ability to interact with others, even if such an ability is deemed a major life activity for the purposes of the ADA.

Nevertheless, because Larsen has raised a genuine issue of material fact as to whether Miller-Dwan regarded her as incapable of working in a broad class of jobs, the burden shifts,

under the McDonnell Douglas test, to Miller-Dwan to show that it had a legitimate, nondiscriminatory reason for taking adverse employment action against Larsen. Miller-Dwan has met this burden by alleging that Larsen was suspended and ultimately terminated for insubordination and performance deficiencies, including Larsen's conflicts with her subordinates and co-workers and her unilateral decision to remove herself from the PCS team.

Larsen is, therefore, left with the burden of showing that Miller-Dwan's justification is merely a pretext for discriminatory action. Bearing in mind the Eighth Circuit's admonition in Webb that courts should be more deferential to plaintiffs alleging discrimination because discrimination cases often turn on inferences rather than on direct evidence, this Court believes that Larsen has cited sufficient evidence in the record to reasonably raise a genuine issue of material fact regarding whether or not Miller-Dwan's justification is pretextual. Specifically, Larsen cites several pages of deposition testimony which suggest that Larsen was an effective Director who made rational business decisions. (See, e.g., Korach Dep. at 54-55; Mahoney Dep. at 235). Accordingly, Larsen's discrimination claims must survive summary judgment.

2. Improper Medical Examination Claim

Although Larsen's discrimination claims survive summary judgment, Larsen's alternative claim under the ADA and MHRA does not survive. In essence, Larsen's argument is that post-hiring demands for medical examinations or the production of medical

records can only be made where the demand is "job related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Larsen further argues, and this Court agrees, that she need not be considered a disabled person within the meaning of the ADA "to state a claim for the unauthorized gathering or disclosure of confidential medical information." Cossette v. Minnesota Power & Light, 188 F.3d 964, 969 (8th Cir. 1999); Fredenburg v. Contra Costa County Dep't of Health Servs., 172 F.3d 1176, 1181 (9th Cir. 1999) (holding that a plaintiff need not be disabled "in order . . . to invoke the ADA's protection against improper medical examinations"); Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1229 (10th Cir. 1997).

Miller-Dwan responds by asserting that it had valid reasons for demanding that Larsen undergo a psychiatric examination and produce her medical records. The Court agrees. As the Eighth Circuit has noted, "employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." Cody, 139 F.3d at 599. Similarly, the Sixth Circuit has held that "health problems that significantly affect an employee's performance of essential job functions justify ordering an physical examination. . . . The same is true for ordering a mental examination when aberrant behavior similarly affects an employee's job performance." In Sullivan, the court upheld a grant of summary judgment in favor of defendants in part because plaintiff "never submitted to the examinations [and thereby] precluded himself from being able to establish a genuine issue of material fact as to whether the exams were related to his job, or were too broad in scope."

Id.

Here, on the recommendation of the Director of Mental Health, who holds a Master's Degree in counseling, Miller-Dwan reasonably requested that Larsen undergo a psychiatric examination and produce her medical records. Because Larsen refused to submit to the examination, she, like the plaintiff in Sullivan, has precluded herself from being able to establish a genuine issue of material fact as to whether the exam would have been related to her job. Summary judgment is, therefore, an appropriate means of disposing of Larsen's claim that she was improperly required to undergo a medical evaluation and produce her medical records.

3. Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse employment action. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc); Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). If a plaintiff establishes a prima facie case of retaliation, the employer may advance a legitimate non-retaliatory reason for the adverse employment action. Id. Once the employer makes such a showing, the plaintiff must adduce evidence that the employer's proffered reason was a mere pretext for illegal retaliation. Id. Because Minnesota courts have adopted this three-part burden-shifting test for claims made pursuant to MHRA, this Court will

consider Larsen's retaliation claims under the ADA and MHRA together for the purposes of this Motion. See Sigurdson v. Isanti County, 386 N.W.2d 715, 719-20 (Minn. 1986).

In this case, Larsen contends that Miller-Dwan retaliated against her for her refusal to undergo a medical examination, her refusal to release her entire medical records, and her filing of a charge of perceived disability discrimination with the EEOC. Because the Court has determined that there is no genuine issue of material fact regarding the propriety of Miller-Dwan's demand that Larsen undergo a psychiatric evaluation and produce her medical records under the ADA, the Court must grant summary judgment on Larsen's first two retaliation claims.

There is, however, some inferential support for Larsen's claim that Miller-Dwan retaliated against her for filing a charge with the EEOC. Larsen's strongest evidentiary support for this claim is that she was terminated only two weeks after she filed her EEOC charge. She argues that such an increase in disciplinary action following a protected activity supports an inference of retaliation. See EEOC v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998) (stating that a short interlude between a protected activity and adverse employment action permits an inference of causation); Couty v. Dole, 886 F.2d 147, 148 (8th Cir. 1989) (stating that "our cases hold that . . . temporal proximity is sufficient as a matter of law to establish the final required element in a prima facie case of discrimination").

Miller-Dwan responds by arguing that it had valid reasons for terminating Larsen's employment. Additionally, Miller-Dwan argues that when a plaintiff fails to produce any

evidence of a causal connection between the protected activity and the adverse employment action other than her own unsubstantiated opinion testimony, summary judgment is appropriate. See Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 570 (8th Cir. 2000). This Court agrees; however, the reasoning of the court in Palesch actually militates against Miller-Dwan in this case. There, the plaintiff produced no evidence other than her general allegations and opinion testimony to support her claim that her employer retaliated against her for filing a charge with the EEOC. Additionally, the adverse employment action at issue in Palesch occurred over two years after she filed her first EEOC charge and ten months after she filed her second EEOC charge.

In the case at hand, Larsen has not only pointed to the temporal proximity between the filing of her EEOC charge and her termination, but she also points out that despite Miller-Dwan's allegations that Larsen was insubordinate and deficiently performing her duties, Miller-Dwan never documented any incidents of insubordination or deficient performance. (See Mahoney Dep. at 87, 98, 235, and 238.) Accordingly, Larsen has produced sufficient factual support to survive summary judgment on her claim that Miller-Dwan retaliated against her for filing an EEOC charge.

4. Breach of Contract Claim

Larsen alleges that Miller-Dwan breached an obligation to pay her a year of salary and benefits pursuant to a Directors' Benefits Handbook provision which reads, "If you are involuntarily terminated without cause, Miller-Dwan will pay your monthly base salary for

three months plus one month for every year of service to a maximum of twelve (12) months." (Compl. ¶ 36). Because Miller-Dwan does not contend that this provision gives rise to a contract, the Court will, for the purposes of this motion, assume that this provision creates a contract between the parties. Miller-Dwan does argue that it had "good cause" to discharge Larsen and thus that it did not violate the alleged contract. As Larsen points out, however, determining whether "good cause" existed is a question of fact. Although Miller-Dwan alleges that it terminated Larsen because of Larsen's performance deficiencies and insubordination, Larsen contends that she was only terminated in retaliation for refusing to undergo a required psychiatric examination, failing to produce her medical records, and filing an EEOC charge. Because a factual issue exists as to whether Miller-Dwan retaliated against Larsen for her filing of a charge with the EEOC, a controversy also exists which precludes summary judgment on Larsen's breach of contract claim.

**CONCLUSION**

For the foregoing reasons, and upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Doc. No. 18) is **GRANTED in part** and **DENIED in part** as follows:

1. Counts One and Two of the Complaint in so far as they allege that Defendant ordered Plaintiff to submit to an improper psychiatric examination and produce medical records in violation of the ADA and MHRA are **DISMISSED**;

2. Counts One and Two of the Plaintiff's Complaint in so far as they allege that Defendant retaliated against Plaintiff, in violation of the ADA and MHRA, for failing to submit to the requested psychiatric examination and for failing to produce her medical records are **DISMISSED**;

3. Count Four of the Plaintiff's Complaint is **DISMISSED** as withdrawn;

4. Plaintiff may proceed to trial on Counts One and Two of the Complaint in so far as they allege discrimination under the ADA and MHRA;

5. Plaintiff may proceed to trial on Counts One and Two of the Complaint in so far as they allege retaliation against Plaintiff for Plaintiff's filing of a charge with the EEOC; and

6. Plaintiff may proceed to trial on Count Three of the Complaint alleging breach of contract.

Dated: October 2, 2001

Paul A. Magnuson
United States District Court Judge